UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION

| | |
|---|---|
| DAVID J. KEEGAN, LUIS GARCIA, ERIC ELLIS, CHARLES WRIGHT, BETTY KOLSTAD, CAROL HINKLE, and JONATHAN ZDEB, individually and on behalf of themselves and others similarly situated, <br><br> Plaintiffs, <br><br> vs. <br><br> AMERICAN HONDA MOTOR CO., INC., <br><br> Defendant. | Case No.: CV 10-09508-MMM-AJWx <br><br> Date: January 23, 2012 <br> Time: 10:00 a.m. <br> Location: Courtroom 780 |

# EXHIBIT 1

# TO

# DEFENDANT AMERICAN HONDA MOTOR CO., INC.'S EVIDENTIARY OBJECTIONS TO THE REPORT OF GEOFFREY P. MILLER

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA—WESTERN DIVISION

| | |
|---|---|
| DAVID J. KEEGAN, LUIS GARCIA, ERIC ELLIS, CHARLES WRIGHT, BETTY KOLSTAD, CAROL HINKLE, AND JONATHAN ZDEB individually, and on behalf of a class of similarly situated individuals,<br><br>Plaintiffs,<br>v.<br><br>AMERICAN HONDA MOTOR CO.,<br><br>Defendant. | Case Number: 2:10-cv-09508-MMM-AJW |

### Rule 26 Expert Report of Geoffrey P. Miller

Prepared for Plaintiffs
David J. Keegan, Luis Garcia, Eric Ellis, Charles Wright, Betty Kolstad, Carol Hinkle, and Jonathan Zdeb

August 19, 2011

_____
Geoffrey P. Miller

## BACKGROUND AND QUALIFICATIONS

1. For more than twenty years I have been involved in the area of class action litigation as a teacher, scholar, attorney, consultant, and expert witness. I am presently teaching or have taught classes covering class action litigation, including Civil Procedure, Complex Litigation, Corporations, Professional Responsibility, and Securities Regulation. I regularly lecture on class action litigation in continuing legal education seminars and participate in academic conferences and meetings devoted to class action issues.

2. I have acted as counsel in class actions and shareholders derivative litigation.

3. I have written approximately two dozen research articles dealing with class action law and practice. My articles on class actions have been cited by state and federal courts across the United States.[1]

---

[1] See *In re Trans Union Corp. Privacy Litigation*, --- F.3d --- (7th Cir. 2011); *Thoroughgood v. Sears, Roebuck & Co.*, 627 F.3d 289 (7th Cir. 2010); *Rodriguez v. West Publishing Corp.*, 563 F.3d 948 (9th Cir. 2009); *Allapattah Services, Inc. v. Exxon Corp.*, 362 F.3d 739 (11th Cir. 2004); *In re Cendent Corp. Litigation*, 264 F.3d 201 (3d Cir. 2001); *Scardeletti v. Debarr*, 265 F.3d 195 (4th Cir. 2001); *AUSA Life Ins. Co. v. Ernst & Young*, 206 F.3d 202 (2d Cir., 2000); *Davis v. Carl Cannon Chevrolet-Olds, Inc.*, 182 F.3d 792 (11th Cir. 1999); *Wren v. RGIS Inventory Specialists*, 2011 WL 1230826 (N.D.Ca. 2011); *In re AT&T Mobility Wireless Data Services Sales Tax Litigation*, 2011 WL 2173746 (N.D.Ill. 2011); *Velez v. Novartis Pharmaceuticals Corp.*, 2010 WL 4877852 (S.D.N.Y. 2010); *Kay Co. v. Equitable Production Co.*, --- F.Supp.2d ----, 2010 WL 4501572 (S.D.W.Va. 2010); *In re Vioxx Products Liability Litig.*, No. 2:05-md-01657-EEF-DEK (E.D. La., October 19, 2010); *In re Lawnmower Engine Horsepower Marketing & Sales Practices Litigation*, --- F.Supp.2d ----, 2010 WL 3310264 (E.D.Wis. 2010); *Klein v. O'Neal, Inc.*, 705 F.Supp.2d 632 (N.D.Tex. 2010); *In re Marsh Erisa Litigation*, 265 F.R.D. 128 (S.D.N.Y. 2010); *In re MetLife Demutualization Litigation*, 689 F.Supp.2d 297 (E.D.N.Y. 2010); *Braud v. Transport Service Co. of Illinois*, 2010 WL 3283398 (E.D.La. 2010); *Fiala v. Metropolitan Life Ins. Co., Inc.*, 27 Misc.3d 599, 899 N.Y.S.2d 531, 2010 N.Y. Slip Op. 20071 (N.Y.Sup., 2010); *In re Revlon, Inc. Shareholders Litigation*, 990 A.2d 940 (Del.Ch. 2010); *Strawn v. Farmers Ins. Co. of Oregon*, 226 P.3d 86 (Or. App. 2010); *In re Trans Union Corp. Privacy Litigation*, 2009 WL 4799954 (N.D.Ill. 2009); *Hall v. Children's Place Retail Stores, Inc.*, 669 F. Supp. 2d 399 (S.D.N.Y. 2009); *Loudermilk Services, Inc. v. Marathon Petroleum Co. LLC*, 623 F.Supp.2d 713 (S.D.W.Va. 2009); *In re OCA, Inc. Securities and Derivative Litigation*, 2009 WL 512081 (E.D.La. 2009); *Lubin v. Farmers Group*, 2009 WL 3682602 (Tex. App. 2009); *Steiner v. Apple Computer Inc.*, 556 F. Supp. 2d 1016 (N.D.Cal. 2008); *In re Enron Corp. Securities, Derivative and ERISA Litigation*, 586 F. Supp. 2d 732 (S.D. Tex. 2008); *In re Cardinal Health Inc. Securities Litigations*, 528 F.Supp.2d 752 (S.D. Ohio 2007); *Acosta v. Trans Union, LLC*, 240 F.R.D. 564 (C.D. Ca. 2007); *Turner v. Murphy Oil USA, Inc.*, 472 F. Supp. 2d 830 (E.D. La. 2007); *Wang v. Chinese Daily News, Inc.*, 236 F.R.D. 485 (C.D.Ca. 2006); *In re Cabletron Sys. Inc. Securities Litigation*, 239 F.R.D. 30 (D.N.H. 2006); *In re Educational Testing Service Praxis Principles of Learning and Teaching: Grades 7-12 Litigation*, 447 F.Supp.2d 612 (E.D. La. 2006); *In re Chiron Corp. Securities Litigation*, 2007 WL 4249902 (N.D.Cal. 2007); *In re Lupron Marketing and Sales Practices Litigation*, 2005 WL 2006833 (D. Mass. 2005); *In re Relafen Antitrust Litigation*, 221 F.R.D. 260 (D. Mass. 2004); *In re Microstrategy Inc.*, 172 F. Supp. 2d 778 (E.D. Va. 2001); *In re Auction Houses Antitrust Litigation*, 197 F.R.D. 71 (S.D.N.Y. 2000); *Burke v. Ruttenberg*, 102 F. Supp. 2d 1280

4. I have frequently consulted with attorneys to assist with issues pertaining to class certification, class settlement, and awards of class counsel fees.

5. I have been qualified as an expert and testified in class action cases in state and federal courts across the United States, including testimony on the topic of the appropriateness of cases for class certification. I have testified or provided expert reports in numerous cases involving claims of product defects.

6. Further information on my background, qualifications, and publications is set forth in my resume, attached hereto as Exhibit A.

## MATERIALS CONSULTED

7. The facts and data considered by me in forming my opinions are:

   a. Plaintiffs' First Amended Complaint;

   b. The Ninth Circuit's opinion in *Wolin v. Jaguar Land Rover N.A., LLC*, 617 F.3d 1168 (9th Cir. 2010), and the district court's Order Granting in Part and Denying in Part Plaintiff's Motion for Class Certification and Granting Plaintiff's Request to Bifurcate Trial in *Wolin v. Land Rover North America, Inc.*, No. 8:07-cv-00376;

   c. The U.S. Supreme Court's recent decision in *Wal-Mart Stores, Inc. v. Dukes*, No. 10-277 (U.S. June 20, 2011); and other judicial precedent; and

   d. Honda Service Bulletin 08-001 (January 22, 2008).

8. A list of all other cases in which I testified as an expert at trial or by deposition during the previous 4 years is attached hereto as Exhibit B.

9. My compensation for the study and testimony in this case is $750/hour with a $15,000 retainer.

---

(N.D. Al. 2000); *In re Texlon Corp. Securities Litigation*, 67 F. Supp. 2d 803 (N.D. Oh. 1999); *In re Baan Co. Securities Litigation*, 186 F.R.D. 214 (D.D.C. 1999); *In re Quantum Health Resources Inc.*, 962 F. Supp. 1254 (C.D. Ca. 1997); *Strong v. BellSouth Telecommunications Inc.*, 173 F.R.D. 167 (W.D. La. 1997).

3

## **PLAINTIFFS' CLAIMS**

10. This is a class action filed by persons who purchased or leased certain defective Honda Civic vehicles ("Class Vehicles"), focusing on the defective design of the rear suspension that gives the rear wheels too much negative camber, which in turn leads to improper tire wear. ("Suspension Defect") Plaintiffs assert that although this defect manifests itself during the warranty period and should be covered by Honda's warranty, Honda failed to adequately repair and replace the Suspension Defect and the damaged tires under warranty.

11. More specifically, the Suspension Defect, as alleged by Plaintiffs, affects the alignment and/or geometry of the Class Vehicles' rear suspension, which causes the rear tires to wear unevenly and prematurely due to the misalignment, causing a rough ride, excessive noise, and the need to replace tires more frequently.

12. Plaintiffs also allege that this condition presents a safety hazard due to the impact the worn tires have on handling, steering, stability, and braking, and because of the potential of catastrophic tire failure.

13. Plaintiffs allege that Honda knew or should have known about this defect and actively concealed and failed to disclose this defect at the time of purchase or lease and thereafter.

14. Plaintiffs allege that, in January 2008, Honda issued a technical service bulletin ("TSB") to only their dealers, but not to vehicle owners and lessees, acknowledging the defect and implementing cheaper temporary, fixes: namely, installing a new "rear upper control arm kit," replacing "the flange bolts and the worn tires," and "a four-wheel alignment to the new specification listed in REPAIR PROCEDURE." (These are referred to herein as the "Suspension Modification.")

4

15. Plaintiffs allege that the 2008 TSB is equally applicable to all the Class Vehicles, including those vehicles that Defendants omitted from the 2008 TSB.

16. Plaintiffs allege that Honda knows that its Suspension Modification only marginally increases the amount of time before consumers again experience the Suspension Defect, but implemented this temporary fix to delay further manifestation of the problems caused by the defect in the hopes that the problems will occur outside the warranty period so Defendants does not have to pay for repairs.

17. Plaintiffs allege that, instead of providing consumers with the Suspension Modification under Honda's warranty, Honda and Honda's dealers, who are its agents for vehicles repairs, have routinely, wrongfully, and unfairly attributed consumers' premature tire to their driving habits, road conditions, and improper maintenance, despite the fact that Defendants has known since 2006 that the premature tire wear is due to the Suspension Defect, and despite the fact that since 2008, Honda has had a fix that it believes can fix the problem.

18. Plaintiffs have cited numerous complaints from Honda drivers discussing this exact issue.

## OPINIONS REGARDING CLASS CERTIFICATION

19. My opinions regarding class certification in this case and the basis and reasons for them are as follows.

20. Plaintiffs seek certification of a class under Federal Rules of Civil Procedure 23(b)(3) and/or (b)(2) and define the "Class" as: "All purchasers and lessees of any 2006 through 2007 Honda Civic and 2006 through 2008 Honda Civic Hybrid vehicles who reside in the United States."

21. Plaintiffs define six Sub-classes, which are members of the Class who purchased or leased their vehicles in California, New York, Florida, North Carolina, Montana and Idaho with two class representatives named for the California Sub-class and one class representative named for each of the other five Sub-classes.

22. In order to certify a Class, the members of the class must be ascertainable by objective criteria. The Plaintiffs' Class and Sub-class definitions do not require any subjective judgments to determine who is a class member. The purchase or lease of a Class vehicle is easily demonstrated by documentation of the purchase or lease. I do not anticipate that Defendants will contest that the Class and Sub-classes are ascertainable.

23. Plaintiffs assert that their proposed Class and Sub-Classes meet the numerosity element. Because these are popular vehicle models and courts generally find that numerosity is satisfied by at least 40 class members, I anticipate that numerosity will be undisputed.

24. Plaintiffs assert multiple common issues that easily satisfy the relatively low hurdle of commonality, including: whether the Class Vehicles suffer from the Suspension Defect, whether the Defendants knew about the defect, and whether Defendants breached various consumer protection statutes. See First Amended Complaint at Dkt. 39 at ¶ 128.

25. These common issues mirror those in *Wolin v. Jaguar Land Rover N.A., LLC*, 617 F.3d 1168 (9th Cir. 2010), a case where the Ninth Circuit reversed the District Court's denial of class certification. *Wolin*, like the present case, involved allegations that vehicles had "an alignment geometry defect" that "caused uneven and premature tire wear and gave their vehicles a rough ride." *Id.* at 1170.

26. The Ninth Circuit found that the plaintiffs "easily satisf[ied] the commonality requirement" noting that the "claims of all prospective class members involve the same alleged

6

defect, covered by the same warranty, and found in vehicles of the same make and model." *Id.* at 1172.

27. In particular, the Court identified several core issues common to all class members that satisfied the predominance requirement, including:

> (1) Whether the LR3's alignment geometry was defective; (2) whether Land Rover was aware of this defect; (3) whether Land Rover concealed the nature of the defect; (4) whether Land Rover's conduct violated the Michigan Consumer Protection Act or the Florida Deceptive and Unfair Trade Practices Act; and (5) whether Land Rover was obligated to pay for or repair the alleged defect pursuant to the express or implied terms of its warranties.

*Id.*

28. The common issues identified by the plaintiffs in *Wolin* are essentially identical to those alleged in the present case: whether the alignment geometry was defective, whether the defendant was aware of the defect, whether the defendant concealed the defect, whether the defendant's conduct violated various statutes, and whether the defendant was obligated to pay for or repair the alleged defect. *Id.*

29. Regarding the consumer protection claims, common issues are likewise essentially identical to those endorsed by the *Wolin* Court, including whether Honda was aware of the defect, whether Honda had a duty to disclose its knowledge, and whether it violated consumer protection laws when it failed to do so. *Id.*

30. In *Wolin*, Land Rover attempted to defeat predominance by arguing that the evidence would demonstrate the prospective class members' vehicles did not suffer from a common defect, but rather, from tire wear due to individual factors such as a driving habits and weather. The Ninth Circuit rejected this argument, holding that proof of the manifestation of a defect is not a prerequisite to class certification. *Id.* at 1173 (citing *Blackie v. Barrack*, 524 F.2d 891, 901 (9th Cir. 1975)). The Ninth Circuit explained:

7

> Gable and Wolin assert that the defect exists in the alignment geometry, not in the tires, that Land Rover failed to reveal material facts in violation of consumer protection laws, and that Land Rover was unjustly enriched when it sold a defective vehicle. All of these allegations are susceptible to proof by generalized evidence. Although individual factors may affect premature tire wear, they do not affect whether the vehicles were sold with an alignment defect.

*Id.* at 1173.

31. Moreover, the *Wolin* Court noted that "all of the proposed class members here are covered by a Limited Warranty that provides for the repair or replacement of defects, and all of the proposed class members allege that their vehicles suffer from the same defect." *Id.* Because the plaintiffs' claims "require common proof of the existence of the defect and a determination whether Land Rover violated the terms of its Limited Warranty" the court concluded that "common issues predominate regarding Land Rover's obligations under its Limited Warranty." *Id.* Accordingly, the Ninth Circuit reversed the denial of class certification:

> As to the existence of a defect in the vehicles, failure to disclose the defect, recovery pursuant to state consumer protection laws, and breach of the Limited Warranty, we hold that the district court erred when it required Gable and Wolin to show that a majority of proposed class members' vehicles manifested the results of the defect. We reverse on this basis, and remand for the district court to address the remaining class issues.

*Id.* at 1174.

32. Predominance is satisfied for the same reasons in the present case. As in *Wolin*, Plaintiffs allege a uniform Suspension Defect in the alignment or geometry of the Class Vehicles, not in the tires. As in *Wolin*, the issue is whether the Class Vehicles where sold with an alignment defect. As in *Wolin*, the Plaintiffs' claims require common proof of the existence of the defect and a determination whether Honda violated the terms of its Limited Warranty, and whether Honda failed to disclose the existence of the defect in violation of state consumer protection laws.

8

33. Moreover, as to predominance, the recent deposition of Richard Shannon, Manager of Service Engineering at American Honda, confirmed that Plaintiffs' claims will require common proof as to the existence of the Suspension Defect and Honda's violation of the terms of the Limited Warranty.[2] Shannon testified that (1) the Civics at issue in this litigation are made in Japan (Sazuka), Ohio (East Liberty) and Canada (Allison, Ontario) (19/22-20/14); (2) Honda studied the issue and determined that there were no differences in the manufacture of these vehicles at any of these plants (20/15-19); (3) all three plants used the same designs when manufacturing the Civic (21/13-16); (4) there are no differences in the rear suspension of Civics regardless of the factory in which they are made. (21/24-22); (5) the 2006 and 2007 Honda Civics (and some 2008's) all have the same negative 1.5 degree camber (38/7-22); (6) Honda's investigation concluded that the camber of the rear suspension was the leading contributor to the tire wear problem and the countermeasure was to lengthen the upper control arms in the rear suspension (23/21-24); (8) the corrective action was to reduce the camber from negative 1.5 degrees to -0.75 degrees by using a longer control arm (27/21-28/5), and this negative 0.75 degree camber was the same specification used in 2001 through 2005 model year Civics (32/21-24; 46/1-4)[3]; and (9) other than changes involving emissions, Shannon believes that the warranty was the same for all Class vehicles (37/24-38/6).

34. The *Wolin* Court also found that typicality was satisfied, reasoning that "[w]hether they experienced premature tire wear at six months, nine months, or later goes to the extent of their damages and not whether named appellants 'possess the same interest and

---

[2] According to Shannon, he was very involved in investigating and administering the service action involving the Civic tire wear issue. (14/4-16.)

[3] After 2005, Honda changed the camber to negative 1.5 to try to give the car a sportier feel. (32/25-33/6.) However, after the problems with the negative 1.5 degree camber in 2006 and 2007 model years, (in addition to the corrective measure to fix the camber in those model years), Honda changed its specifications back to a negative .75 degree camber for its 2008 through 2011 model years. (36/3-4.)

9

suffer[ed] the same injury as the class members.'" *Id.* at 1175 (citing *E. Tex. Motor Freight Sys. Inc. v. Rodriguez*, 431 U.S. 395, 403 (1977)).

35. Finally, the Ninth Circuit addressed superiority. Land Rover argued that "automobile-wear cases involve inherently individualized determinations such that classwide litigation would be inefficient and unmanageable" and that instead of pursuing a class action, vehicle owners should separately litigate the issues of liability and causation. *Id.* at 1176. The Ninth Circuit rejected this argument, stressing that the plaintiffs alleged that their injury results "not from bad tires, but from a single, defective alignment geometry" and that it was therefore "far more efficient to litigate this—the basis for their claim—on a classwide basis rather than in thousands of individual and overlapping lawsuits." *Id.* The Ninth Circuit further stated:

> Whether the alignment geometry was defective, whether Land Rover violated its Limited Warranty for defects within the vehicle, and whether Land Rover was unjustly enriched because consumers' vehicles are worth less due to the defect are issues common to all class members and can be litigated together. Proposed class members face the option of participating in this class action, or filing hundreds of individual lawsuits that could involve duplicating discovery and costs that exceed the extent of proposed class members' individual injuries. Thus, classwide adjudication of appellants' claims is superior to other means of adjudicating this case.

*Id.*

36. The Supreme Court's recent decision in *Wal-Mart Stores, Inc. v. Dukes*, No. 10-277 (U.S. June 20, 2011) does not change this analysis. *Wal-Mart* involved individual questions regarding the motivation behind thousands of managers' decisions regarding hiring or promoting women. The present case involves the common question regarding a defect common to all Class vehicles which does not vary based on any individual decisions.

37. By contrast, Plaintiffs' contentions discussed above are common contentions, capable of classwide resolution, such that determination of the truth of these contentions will resolve an issue central to the validity of all claims.

38. Regarding manageability, Plaintiffs will propose that the trial be bifurcated into (1) a liability phase and (2) a damages phase.[4] Such birfurcation was approved by the District Court in *Wolin* following remand from the Ninth Circuit. See Ex. C, No. 8:07-cv-00376, *Wolin v. Land Rover North America, Inc.*; in the United States District Court for the Central District of California, Order Granting in Part and Denying in Part Plaintiff's Motion for Class Certification and Granting Plaintiff's Request to Bifurcate Trial, Dkt. No. 87 at 9. ("*Wolin*")

39. A court may bifurcate a trial "for convenience, to avoid prejudice, or to expedite and economize." FED. R. CIV. P. 42(b). The district court has "broad discretion" to order separate trials under this rule. *Bates v. United Parcel Service*, 204 F.R.D. 440, 448 (N.D. Cal. 2001) (citing *Davis & Cox v. Summa Corp.*, 751 F.2d 1507, 1517 (9th Cir.1985)). Factors to be considered when determining whether to bifurcate include: avoiding prejudice, separability of the issues, convenience, judicial economy, and reducing risk of confusion. *Id.* (citing *William W. Schwarzer, et al.*, FEDERAL CIVIL PROCEDURE BEFORE TRIAL § 16:160.4 (Rev. # 1 2001)).

40. In *Wolin II*, the District Court (acknowledging the Ninth Circuit agreement) recognized that proving liability in that case involved matters highly independent from those relevant to proving damages, because liability primarily related to issues concerning the alignment of the vehicles, while damages will involve many separate factors related specifically to tire wear. No. 8:07-cv-00376, *Wolin*, Dkt. No. 87 at 10. The Court found that bifurcation

---

[4] Differences in applicable law do not create manageability problems. Plaintiffs allege that a single state's law—California—applies to the entire class. If this Court holds otherwise as regards claims for implied warranty, the applicable law will be that of the six states where the subclass representatives reside.

would serve the interest of judicial economy by allowing the parties to separately and efficiently focus on these distinct issues. *Id.* In fact, the Court observed that bifurcation might eliminate the need to consider evidence of damages at all if Defendant prevails at the liability stage of trial. *Id.* Likewise, the Court held that bifurcation would not only improve efficiencies in the litigation process, but would also help prevent juror confusion at trial by allowing the jury to decide issues that are as narrowly tailored as possible. *Id.* Finally, the Court found that bifurcation would not prejudice the Defendant. *Id.*

41. The parallels between *Wolin* and the instant case render this reasoning equally applicable to the bifurcation analysis here. Phase I will focus on the establishing the uniformity of the Suspension Defect and Honda's systematic failure to honor an identical written warranty. As in *Wolin*, once liability is established, any individual causation and damages issues can be quickly and easily resolved in Phase II. This two-phase approach will favor judicial economy by allowing the parties to separately focus on these distinct issues. Juror confusion will likewise be avoided. Bifurcation is therefore appropriate here.

42. Just a few final words are in order. Nothing in the record I have reviewed raises any questions as to the typicality of the named plaintiffs either for the class as a whole or for any of the subclasses. Likewise, nothing I have reviewed raises any question about the capacity of the named plaintiffs to provide adequate representation for the class. I am familiar with the law firm of Caddell & Chapman and consider them to be highly experienced and ethical attorneys who are superbly qualified to represent the class's interests. Finally, it is clear that this Court is an appropriate forum for the litigation to proceed.

12

## Conclusion

43. This is an easy case for certification. The class and subclasses are readily ascertainable; numerosity, commonality, typicality and adequacy of representation are all present; the common issues predominate over the individual issues; the case is manageable as a class action; and the action is superior to other means for resolving the controversy. Essentially all of the pertinent issues presented in this case have been resolved by the Ninth Circuit's opinion in *Wolin*. Accordingly it is my opinion that this case is suitable for class certification.[5]

Geoffrey P. Miller
August 18, 2011

---

[5] I understand that discovery in this case is not complete, and reserve the right to revise or amend my opinion based on any additional information revealed in that process.