Michael A. Caddell (State Bar No. 249469)
mac@caddellchapman.com
Cynthia B. Chapman (State Bar No. 164471)
Cory S. Fein (State Bar No. 250758)
**CADDELL & CHAPMAN**
1331 Lamar, Suite 1070
Houston TX 77010-3027
Telephone: (713) 751-0400
Facsimile: (713) 751-0906

Payam Shahian (SBN 228406)
Pshahian@slpattorney.com
**STRATEGIC LEGAL PRACTICES, APC**
1875 Century Park East, Suite 700
Los Angeles CA 90067
Telephone:  (310) 277-1040
Facsimile:  (310) 943-3838

[Additional attorneys listed below signature line]
Attorneys for Plaintiffs

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA—WESTERN DIVISION

| | |
|---|---|
| DAVID J. KEEGAN, LUIS GARCIA, ERIC ELLIS, CHARLES WRIGHT, BETTY KOLSTAD, CAROL HINKLE, AND JONATHAN ZDEB, individually, and on behalf of a class of similarly situated individuals,<br><br>        Plaintiffs,<br><br>        v.<br><br>AMERICAN HONDA MOTOR CO., INC.,<br><br>        Defendant. | Case No. 2:10-cv-09508-MMM-AJW<br><br>**NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date:     April 15, 2013<br>Time:    10:00 a.m.<br>Place:    Courtroom 780 |

**PLEASE TAKE NOTICE** that on April 15, 2013 at 10:00 a.m., or as soon thereafter as the matter may be heard in Courtroom 780 of the above-captioned Court, located at 255 East Temple Street, Los Angeles, CA 90012, the Honorable Margaret M. Morrow presiding, Plaintiffs will, and hereby do, move this Court to:

1.      Preliminarily approve the Settlement Agreement, attached as Exhibit 1 to the Declaration of Michael A. Caddell.

2.      Conditionally certify, for settlement purposes only, a settlement class consisting of all persons and entities who purchased or leased 2006 and 2007 Honda Civics, 2006 and 2007 Honda Civic Hybrids, and certain 2008 Honda Civic Hybrids distributed for sale or lease in the United States (including Puerto Rico, Guam, and the U.S. Virgin Islands), with a subclass consisting of members of the settlement class who owned a vehicle designated as a "Civic Si."

3.      Appoint Plaintiffs David J. Keegan, Luis Garcia, Eric Ellis, Charles Wright, Betty Kolstad, Carol Hinkle, Benittia Hall, and Shawn Phillips as Class Representatives, and Shawn Phillips as Representative of the Civic Si subclass.

4.      Appoint Caddell & Chapman, Strategic Legal Practices, APC, Mazie Slater Katz & Freeman, LLC and The Law Office of Robert L. Starr as Class Counsel.

5.      Approve the proposed form and method of giving Settlement Class Members notice of the action and proposed settlement ("Notice").

6.      Direct that Notice be given to Settlement Class Members in the proposed form and manner set forth in the Settlement Agreement.

7.      Set a fairness hearing date for final approval of the class action settlement.

This Motion is based upon: (a) this Notice of Motion and Motion; (b) the Memorandum of Points and Authorities in Support of Motion for Preliminary

MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

Approval of Class Action Settlement; (c) the Declaration of Michael A. Caddell; (d) the [Proposed] Order Granting Preliminary Approval of Class Action Settlement, filed concurrently herewith; (e) the records, pleadings, and papers filed in this action; and (f) upon such other documentary and oral evidence or argument as may be presented to the Court at the hearing of this Motion.

This Motion is unopposed by Defendant American Honda Motor Co., Inc.

Dated:  March 18, 2013                    Respectfully submitted,


By:      /s/ Michael A. Caddell
         Michael A. Caddell (SBN 249469)
         mac@caddellchapman.com
         Cynthia B. Chapman (SBN. 164471)
         cbc@caddellchapman.com
         Cory S. Fein (SBN 250758)
         csf@caddellchapman.com
         CADDELL & CHAPMAN
         1331 Lamar, Suite 1070
         Houston TX 77010-3027
         Telephone:  (713) 751-0400
         Facsimile:  (713) 751-0906

         Payam Shahian (SBN 228406)
         Pshahian@slpattorney.com
         STRATEGIC LEGAL PRACTICES, APC
         1875 Century Park East, Suite 700
         Los Angeles, California 90067
         Telephone:  (310) 277-1040
         Facsimile:  (310) 943-3838

         Matthew R. Mendelsohn (*pro hac vice*)
         mmendelsohn@mskf.net
         MAZIE SLATER KATZ & FREEMAN, LLC
         103 Eisenhower Parkway
         Roseland NJ 07068
         Telephone:  (973) 228-9898
         Facsimile:  (973) 228-0303

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Robert L. Starr (SBN 183052)
Starresq@hotmail.com
**THE LAW OFFICE OF ROBERT L. STARR**
23277 Ventura Boulevard
Woodland Hills, California 91364-1002
Telephone:  (818) 225-9040
Facsimile:  (818) 225-9042

*Attorneys for Plaintiffs*

MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

# TABLE OF CONTENTS

MEMORANDUM OF POINTS AND AUTHORITIES ........................................... 1

I.  INTRODUCTION ............................................................................................. 1

II. SUMMARY OF THE LITIGATION AND PROPOSED
    SETTLEMENT ................................................................................................ 2

    A.  Plaintiffs' Pre-Suit Investigation ............................................................ 2

    B.  The Litigation .......................................................................................... 2

    C.  Terms of the Proposed Settlement .......................................................... 5

        1.  Control Arm Replacement ............................................................ 5

        2.  Reimbursement for Control Arm Replacement ............................ 6

        3.  Reimbursements for Premature Tire Wear .................................. 6

        4.  The Claims Process ...................................................................... 7

        5.  Release .......................................................................................... 8

        6.  Attorneys' Fees and Expenses ..................................................... 8

        7.  Service Awards ............................................................................. 8

III. ARGUMENT .................................................................................................... 8

    A.  The Court Should Grant Preliminary Approval of the Class
       Settlement ................................................................................................. 8

        1.  The Settlement Meets the Standard for Preliminary
           Approval ...................................................................................... 8

        2.  The Proposed Settlement is Well Within the Range
           of Reasonableness Warranting Preliminary Approval
           and is Justified in Light of the Risks of Continued
           Litigation .................................................................................... 11

    B.  Conditional Class Certification is Appropriate for
       Settlement Purposes. .............................................................................. 13

    C.  The Proposed Notice Plan Meets the Requirements
       of Rule 23. .............................................................................................. 15

    D.  Notice of the Settlement Will Be Provided to Appropriate
       Federal and State Officials. .................................................................... 16

IV. CONCLUSION ............................................................................................... 16

1

# <u>TABLE OF AUTHORITIES</u>

2

3
## <u>CASES</u>

4

5
*Acosta v. Trans Union*,
243 F.R.D. 377 (C.D. Cal. 2007)................................................................. 9

6

7
*Amchem Prods. v. Windsor*,
521 U.S. 591 (1997) ................................................................................ 13

8

9
*Churchill Village v. Gen. Elec.*,
361 F.3d 566 (9th Cir. 2004) ................................................................... 11

10

11
*Daugherty v. American Honda Motor Co.*,
144 Cal. App. 4th 824 (2006) .................................................................. 11

12

13
*Gribble v. Cool Transports Inc.*,
No. 06-cv-04863, 2008 WL 5281665, at *1

14
(C.D. Cal. Dec. 15, 2008)........................................................................ 10

15
*Hanlon v. Chrysler Corp.*,
150 F.3d 1011 (9th Cir. 1998) ................................................................. 14

16

17
*Harris v. Vector Mktg. Corp.*,
No. 08-cv-5198, 2011 WL 1627973, at *1

18
(N.D. Cal. April 29, 2011)....................................................................... 10

19

20
*In re M.L. Stern Overtime Litigation*,
No. 07-CV-0118, 2009 WL 995864, at *1

21
(S.D. Cal. April 13, 2009) ......................................................................... 9

22

23
*In re Motor Corp*,
Case No. 8:10-ml-02151-JVS-FMO

24
(C.D. Cal. December 28, 2012)................................................................ 15

25
*In re Toyota Motor Corp. Unintended Acceleration*,
785 F. Supp. 2d 925 (C.D. Cal. 2011) ..................................................... 15

26

27
*Mullane v. C. Hanover Bank & Trust*,
339 U.S. 306 (1950) ................................................................................ 15

28

*Samuel-Bassett v. Kia Motors America, Inc.*,
      34 A.3d 1 (Penn. 2011) ........................................................................ 12

*Satchell v. Fed. Exp. Corp.*,
      No. 03-cv-2659, 2007 WL 1114010, at *1
      (N.D. Cal. Apr. 13, 2007) .................................................................... 10

*Sullivan v. DB Investments*, *Inc.*,
      667 F.3d 273 (3d Cir. 2011) (en banc), cert denied,
      __U.S.__, 132 S. Ct. 1876 ................................................................... 14

*Vasquez v. Coast Valley Roofing, Inc.*,
      670 F. Supp. 2d 1114 (E.D. Cal. 2009) ................................................ 11

## STATUTES

CLASS ACTION FAIRNESS ACT, 28 U.S.C. § 1715 ............................................... 16

## RULES

FED. R. CIV. P. 23 ............................................................................... 9, 14

## TREATISES

4 ALBA CONTE AND HERBERT NEWBERG, NEWBERG ON CLASS
      ACTIONS § 11.25 (4th ed. 2002) ......................................................... 9

MANUAL FOR COMPLEX LITIGATION (FOURTH) §§ 21.632–34 (2012).................. 9

MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

Plaintiffs brought this action on behalf of themselves and a putative nationwide class of current and former owners and lessees of 2006 and 2007 Honda Civics, 2006 and 2007 Honda Civic Hybrids, and certain 2008 Honda Civic Hybrids distributed for sale or lease in the United States (including Puerto Rico, Guam, and the U.S. Virgin Islands) (collectively, the "Settlement Class Vehicles").   Plaintiffs allege that the Settlement Class Vehicles suffer from a suspension defect that causes uneven and premature tire wear.   Honda has disputed this claim and maintains that the Settlement Class Vehicles functioned properly, that they were not defective, and that no warranties or statutes were breached.

Plaintiffs are pleased to report that they have reached a settlement with Defendant American Honda Motor Co., Inc. ("Honda").   The Settlement Agreement[1] provides for replacement of allegedly defective control arms in the Settlement Class Vehicles, as well as reimbursement for tires replaced due premature tire wear, whenever the vehicles experienced premature or uneven tire wear, as described in more detail below.   (*See infra* Section II.C.)   The settlement thus provides the Class Members remedies similar to what they could expect to receive if the case were successfully tried, but without the delay and risks associated with trial, and it should therefore be approved.

---

[1]   Unless indicated otherwise, capitalized terms used herein have the same meaning as those referenced in the Settlement Agreement attached as Exhibit 1 to the Declaration of Michael A. Caddell, attached as Exhibit A.

## II.     <u>SUMMARY OF THE LITIGATION AND PROPOSED SETTLEMENT</u>

### A.     <u>Plaintiffs' Pre-Suit Investigation</u>

This settlement is the product of years of investigation into the alleged defect. Before filing the Complaint, Plaintiffs devoted months to investigating the defect alleged in this action. (Declaration of Michael A. Caddell ("Caddell Decl.") ¶ 22.) Among other things, Plaintiffs set up a website and fielded hundreds of inquiries from prospective class members during the course of this litigation, and consulted the National Highway Traffic Safety Administration ("NHTSA") website, where consumers had complained about the alleged defect. (*Id.*) In addition, Plaintiffs reviewed Honda manuals and technical service bulletins, blogs discussing the alleged defect, and relevant federal motor vehicle safety regulations. (*Id.*) Finally, Plaintiffs visited tire facilities, conducted research into potential causes of action, and researched other cases in which the same or similar defects were alleged. (*Id.*)

### B.     <u>The Litigation</u>

On December 10, 2010, Plaintiff David Keegan filed this action on behalf of a nationwide class of owners and lessees of the Settlement Class Vehicles. (Dkt. 1.) In the FAC, Plaintiffs allege that the Settlement Class Vehicles suffer from a common defect that gives the rear wheels excessive "negative camber." (Dkt. 39 ¶¶ 3–7.) "Negative camber" means that the top of the wheel is slanted toward the car relative to the bottom of the wheel. (*Id.*) While some negative camber aids vehicle stability, too much negative camber can lead to disruptive tire noise and excessive and premature tire wear—exactly what has allegedly plagued the Class Vehicles here. (*Id.*) As a result, many Settlement Class members replaced their vehicles' tires prematurely, in some cases after fewer than 20,000 miles. (*Id.*)

Plaintiffs brought consumer fraud claims, alleging that Honda was aware of

the Suspension Defect but failed to disclose the defect to Settlement Class Members at the time of sale or thereafter.  (Dkt. 39 ¶¶ 7, 8, 17.)  Plaintiffs also brought claims under warranty law, alleging that Honda wrongly refused to repair the alleged defect while it was under warranty.  Plaintiffs sought as damages the cost to repair the suspension defect and reimbursement for premature tire replacements.  (*Id.* at ¶ 15.)[2]

Honda filed a motion to dismiss each of Plaintiffs' legal claims on June 20, 2011.  (Dkt. 45.)  Plaintiffs engaged in extensive briefing and prepared for and presented oral argument at a hearing on this motion.  The Court granted the motion in part and denied it in part, preserving Plaintiffs' claims in large part except for certain state-law implied warranty claims.  (Dkt. 110; Caddell Decl. ¶ 20.)

Plaintiffs also engaged in substantial fact and expert discovery including: (1) propounding and responding to written discovery and reviewing over 115,000 documents produced by Honda in this case, (2) defending depositions of six Plaintiffs, (3) taking depositions of four Honda witnesses, (4) attending multiple vehicle inspections, (5) retaining experts and obtaining expert declarations in support of class certification, and (6) taking and defending expert depositions. (Caddell Decl. ¶¶ 23–24.)  In addition, Plaintiffs' experts purchased three Honda vehicles and drove them for thousands of miles to investigate the alleged defect and its effect on tire wear.  (*Id.* ¶ 28.)

Class certification also involved significant motion practice, including asserting and responding to evidentiary objections, supplemental briefing, and preparing for and presenting oral argument at the class certification hearing.  (*See,*

---

[2]  Honda has denied the material factual allegations in the case and does not admit any liability by this settlement.

*e.g.*, Dkt. 76, 107, 108, 109, 111, 112, 118, 119, 124–129, 131–134, and 138; *see also* Caddell Decl. ¶ 30.)   On June 12, 2002, the Court certified the following classes and subclasses:

(A) ["**Warranty Class**:"]  All purchasers and lessees of any 2006 through 2007 Honda Civic and 2006 through 2008 Honda Civic Hybrid vehicle who purchased or leased the vehicle in California and who allege claims for breach of express and implied warranty under California law.

(B) ["**Consumer Protection Class**:"]  All purchasers and lessees of any 2006 through 2007 Honda Civic and 2006 through 2008 Honda Civic Hybrid vehicle who purchased or leased the vehicle in California, Florida, and New York, divided into the following three subclasses:

(1) ["**California Consumer Protection Subclass**:"]  a California UCL/CLRA class of purchasers and lessees of any 2006 through 2007 Honda Civic and 2006 through 2008 Honda Civic Hybrid vehicle who purchased or leased the vehicle in California between December 10, 2006 and December 10, 2010;

(2) ["**New York Consumer Protection Subclass**:"]  a New York General Business Law § 349 class of purchasers and lessees of any 2006 through 2007 Honda Civic and 2006 through 2008 Honda Civic Hybrid vehicle who purchased or leased the vehicle in New York between December 10, 2007 and December 10, 2010; and

(3) ["**Florida Consumer Protection Subclass**:"]  a Florida Deceptive and Unfair Trade Practices Act class of purchasers and lessees of any 2006 through 2007 Honda Civic and 2006 through 2008 Honda Civic Hybrid vehicle who purchased or leased the vehicle in Florida between December 10, 2006 and December 10, 2010.

1   (Dkt. 138 at 76.)  Honda petitioned for interlocutory review of the Court's class

2   certification order under Federal Rule of Civil Procedure 23(f).   The parties

3   engaged in extensive briefing of this petition, which the Ninth Circuit denied on

4   November 9, 2012.  (Dkt. 146; Caddell Decl. ¶ 31.)

5   Prior to and during the pendency of the 23(f) petition, the parties

6   commenced settlement discussions.   (Caddell Decl. ¶ 32.)   The parties

7   participated in a formal mediation session with Maureen Summers on July 12,

8   2012 and a subsequent in-person meeting between counsel on November 15,

9   2012. (*Id.* ¶¶ 32–33.)  In addition, the parties had multiple telephone conferences

10  regarding the terms of the proposed settlement.  (*Id.* ¶ 32.)  At the November 15

11  meeting, Honda agreed to the broad terms of settlement relief to a nationwide

12  class, and the parties began to formalize the Settlement Agreement. (*Id.* ¶ 33.)  At

13  all times, these negotiations were conducted at arm's length and without regard to

14  any agreement regarding attorneys' fees, expenses, or service awards.  (*See id.*)

15  Only after the benefits to the Settlement Class had been agreed upon did the

16  parties engage in a final mediation session with Maureen Summers on January 11,

17  2013 to resolve the issues of attorneys' fees, expenses, and service awards.  (*Id.* ¶

18  34.)

19      **C.**     **Terms of the Proposed Settlement**

20          **1.**     **Control Arm Replacement**

21  Honda will provide Control Arm Replacements without charge at an

22  Authorized Honda Dealer for Settlement Class Members with proof that tires on

23  the Settlement Class Vehicle have experienced Reimbursable Tire Wear.  Proof

24  requires either (1) inspection at an Authorized Honda Dealer that finds

25  Reimbursable Tire Wear, or (2) Proof of Payment establishing Reimbursable Tire

26  Wear.  To be eligible to receive this benefit, Settlement Class Members must bring

27  their Settlement Class Vehicle to an Authorized Honda Dealer and provide the

28

required information to an Authorized Honda Dealer within the Claims Period. (Caddell Decl., Ex. 1 at 11–13.)

### 2. Reimbursement for Control Arm Replacement

For current and former owners and lessees of Settlement Class Vehicles who have previously paid for a Control Arm Replacements, Honda will reimburse their Out-of-Pocket Expenses for parts and labor for the Control Arm Replacements. (*Id*. at 12.) To be eligible to receive reimbursement, Settlement Class Members must provide Proof of Payment and submit a Claim Form in the manner described below within the Claims Period. (*Id*. at 12–13.)

### 3. Reimbursement for Premature Tire Wear

Settlement Class Members who replaced their tires due to Reimbursable Tire Wear may submit a claim for pro rata reimbursement for Out-of-Pocket Expenses for tire replacement pursuant to the schedules set forth below. (*Id*. at 12–13.) To be eligible for this pro rata reimbursement, Settlement Class Members must provide Proof of Payment and submit a valid Claim Form within the Claims Period. (*Id*.)

***Settlement Class Vehicles (Except Honda Civic SI) Reimbursement Chart***

| | Tread Depth | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| **Mileage** | 0/32" | 1/32" | 2/32" | 3/32" | 4/32" | 5/32" | 6/32" or more | No tread depth info |
| 0-3,500 | 100% | 100% | 100% | 75% | 50% | 50% | 0% | 100% |
| 3,501-6,500 | 100% | 100% | 100% | 75% | 50% | 50% | 0% | 75% |
| 6,501-9,500 | 100% | 100% | 100% | 75% | 50% | 25% | 0% | 50% |
| 9,501-12,500 | 75% | 75% | 75% | 50% | 25% | 0% | 0% | 50% |
| 12,501-15,500 | 75% | 75% | 75% | 50% | 25% | 0% | 0% | 50% |
| 15,501-18,750 | 50% | 50% | 50% | 50% | 25% | 0% | 0% | 25% |
| 18,751-21,750 | 25% | 25% | 25% | 0% | 0% | 0% | 0% | 25% |
| 21,751-25,000 | 25% | 25% | 25% | 0% | 0% | 0% | 0% | 0% |
| 25,000 and over | 0% | 0% | 0% | 0% | 0% | 0% | 0% | 0% |

(% covered by Honda)

(not covered by Honda)

*Honda Civic SI—OEM Tires Reimbursement Chart*

| Mileage | Tread Depth | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | 0/32" | 1/32" | 2/32" | 3/32" | 4/32" | 5/32" | 6/32" or more | No tread depth info |
| 0-3,500 | 100% | 100% | 100% | 100% | 50% | 50% | 0% | 100% |
| 3,501-6,500 | 100% | 100% | 100% | 100% | 50% | 25% | 0% | 75% |
| 6,501-9,500 | 75% | 75% | 75% | 50% | 50% | 0% | 0% | 50% |
| 9,501-12,500 | 75% | 75% | 75% | 50% | 25% | 0% | 0% | 25% |
| 12,501-15,500 | 50% | 50% | 50% | 25% | 0% | 0% | 0% | 25% |
| 15,501-18,750 | 0% | 0% | 25% | 25% | 0% | 0% | 0% | 0% |
| 18,751-21,750 | 0% | 0% | 0% | 0% | 0% | 0% | 0% | 0% |
| 21,751-25,000 | 0% | 0% | 0% | 0% | 0% | 0% | 0% | 0% |
| 25,000 and over | 0% | 0% | 0% | 0% | 0% | 0% | 0% | 0% |

▒▒▒ (% covered by Honda)

☐ (not covered by Honda)

### 4.      The Claims Process

The claims process has been designed to minimize the burden on the Settlement Class Members while also ensuring that only valid claims are paid. The claim form is a simple form that will be mailed to current and former owners and lessees of Settlement Class Vehicles along with a notice explaining the settlement.  (*See* Caddell Decl., Ex. 1 at 34–36.)  To receive relief, Settlement Class Members need only supply the information on the claim form and submit the appropriate documentation.  (*Id*.)

Honda is responsible for verifying a class member's eligibility to recover under the Settlement Agreement and must give class members an opportunity to cure any deficiency in their claims.  (*Id*. at 17–18.)  Class Counsel will be informed of any tentatively rejected claims and will have an opportunity to dispute the determination and confer with Honda to resolve the issue.  (*Id*. at 18.)  Any Settlement Class Member whose claim is ultimately denied will also have

MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

the right to appeal to the Better Business Bureau, with Honda bearing the expense of any fees charged by the Better Business Bureau.  (*Id*. at 14–15.)

### 5. Release

In exchange for the benefits provided by Honda under the proposed settlement, class members will release Honda, related companies, their employees and other related persons from all claims that arise from or relate to the alleged suspension defect, with the exception of personal injury and property damage (excluding damage to Settlement Class Vehicles).  (*Id*. at 15–16.)

### 6. Attorneys' Fees and Expenses

The time and expense incurred by Class Counsel to secure the relief on behalf of the Settlement Class will be paid by Honda, separate from the benefits to the Settlement Class.  At a separate fee mediation that took place after relief to the Settlement Class had already been agreed on, Honda agreed not to oppose an application for fees and expenses not to exceed $3.165 million.  (Caddell Decl. ¶ 34, Caddell Decl., Ex. 1.)

### 7. Service Awards

Service Awards to the Plaintiffs for their efforts to secure the relief on behalf of the Settlement Class will be paid by Honda, separate from the benefits to the Settlement Class.  (Caddell Decl., Ex. 1 at 24.)  Honda has agreed not to oppose an application for service awards to the named Plaintiffs not to exceed $35,000 collectively. (*Id*. at 13.)  Plaintiffs will apply for service awards in specific amounts for each class representative at the appropriate time.

## III. ARGUMENT

### A. The Court Should Grant Preliminary Approval of the Class Settlement.

#### 1. The Settlement Meets the Standard for Preliminary Approval.

1    Class action settlements must be approved by the Court to be effective.

2    *See* FED. R. CIV. P. 23(e).  Court approval occurs in three steps: (1) a preliminary

3    approval hearing, at which the court considers whether the proposed settlement

4    is within the range of reasonableness meriting final approval; (2) a notice and

5    comment stage, during which class members are informed about the proposed

6    settlement and given an opportunity to object or exclude themselves from the

7    settlement; and (3) a "formal fairness hearing," or final approval hearing, at

8    which the court decides whether the proposed settlement should be approved as

9    fair, adequate, and reasonable to the class.  *See* Manual for Complex Litigation

10   (Fourth) §§ 21.632–34 (2012).

11   At the final approval stage, after the class members have been notified of

12   the proposed settlement and had an opportunity to comment, the court will

13   determine whether the settlement is fair, reasonable, and adequate.  At the

14   preliminary approval stage, however, the court determines only whether the

15   settlement falls "within the range of possible approval, such that there is any

16   reason to notify the class members of the proposed settlement and to proceed with

17   a fairness hearing."  *See In re M.L. Stern Overtime Litigation*, No. 07-CV-0118,

18   2009 WL 995864, at *3 (S.D. Cal. April 13, 2009) (internal quotation marks

19   omitted); *Acosta v. Trans Union*, 243 F.R.D. 377, 386 (C.D. Cal. 2007) ("To

20   determine whether preliminary approval is appropriate, the settlement need only

21   be *potentially* fair, as the Court will make a final determination of its adequacy at

22   the hearing on Final Approval, after such time as any party has had a chance to

23   object and/or opt out.") (emphasis in original).  In other words, the Court makes

24   only a preliminary determination of the settlement's fairness, reasonableness, and

25   adequacy, granting preliminary approval unless the settlement terms are so

26   unacceptable that a formal fairness hearing would be a waste of time.  *See* Manual

27

28

for Complex Litigation, § 21.632; 4 ALBA CONTE AND HERBERT NEWBERG, NEWBERG ON CLASS ACTIONS § 11.25 (4th ed. 2002) § 11.25.

As a preliminary matter, the settlement was negotiated at arm's length by counsel well versed in class litigation, particularly with respect to automotive defect cases.[3]  (*See Caddell* Decl. ¶¶ 8–14, 21.)  The settlement is therefore entitled preliminarily to "a presumption of fairness." *Gribble v. Cool Transports Inc.*, No. 06-cv-04863, 2008 WL 5281665, at *9 (C.D. Cal. Dec. 15, 2008).  In assessing preliminary approval, courts consider whether a settlement: (1) appears to be the product of serious, informed, non-collusive negotiations; (2) has no obvious deficiencies; (3) does not improperly grant preferential treatment to class representatives or segments of the class; and (4) falls within the range of possible approval.  *See Harris v. Vector Mktg. Corp.*, No. 08-cv-5198, 2011 WL 1627973, at *7 (N.D. Cal. April 29, 2011).  Here, the settlement was reached after extensive discovery and motion practice, so that Plaintiffs and Class Counsel had adequate information with which to evaluate their claims.  (Caddell Decl. ¶¶ 22–31.)  Furthermore, the parties reached the settlement in part via arm's-length mediation sessions with Maureen Summers, an experienced mediator, showing that the settlement was not the result of collusion or bad faith.  (*Id.* ¶¶ 32–34); *see Satchell v. Fed. Exp. Corp.*, No. 03-cv-2659, 2007 WL 1114010, at *4 (N.D. Cal. Apr. 13, 2007) ("The assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive.")  Second, far from having any "obvious deficiencies," the settlement represents an excellent result for the Settlement Class.  (*Id.* ¶ 39.)  Third, the settlement does not improperly grant preferential treatment to the class representatives or any segments of the

---

[3]   In support of class certification, Plaintiffs' counsel submitted declarations setting forth their extensive experience and success in class action and complex litigation involving defective products, including defective automobiles. (*See* Dkt. 81 at 11–12 & Exs. 17, 18, 19 & 20.)

Settlement Class.  *See Harris*, 2011 WL 1627973, at \*9 (holding that settlement agreement providing for incentive awards to class representatives subject to the court's ultimate determination did not grant "preferential treatment" for purposes of this preliminary approval factor).  Finally, as shown below, the settlement falls within the range of possible approval.   The Court should therefore grant preliminary approval.

> ### 2.  The Proposed Settlement is Well Within the Range of Reasonableness Warranting Preliminary Approval and is Justified in Light of the Risks of Continued Litigation.

Courts evaluating the "range of possible approval" criterion "primarily consider plaintiffs' expected recovery balanced against the value of the settlement offer."  *Vasquez v. Coast Valley Roofing, Inc.*, 670 F. Supp. 2d 1114, 1125 (E.D. Cal. 2009).  In addition, the Court may preview the factors that ultimately inform final approval (to the extent they can be evaluated at the preliminary approval stage): (1) the strength of plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of class members to the proposed settlement.  *See Churchill Village v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004).

The proposed settlement in this case is well within the range of reasonableness and thus merits preliminary approval.  First, while Plaintiffs have confidence in their claims, Honda has raised a number of substantive defenses, including, among other things, a defense as to whether the alleged suspension defect caused Plaintiffs' tire wear, a defense that Honda had no prior knowledge of the alleged defect and no duty to disclose it to consumers, and a defense that Plaintiffs cannot prove the alleged defect is safety related.  (*See* Dkt. 28-1 at 7–8

1   (citing *Daugherty v. American Honda Motor Co.*, 144 Cal. App. 4th 824 (2006));

2   Caddell Decl. ¶ 37.)   Settlement eliminates any potential risk of non-recovery if

3   Honda were to prevail on these defenses.

4          Second, if the parties had been unable to resolve this case through

5   settlement, the continued litigation would have been expensive and lengthy,

6   requiring significant and costly involvement from expert witnesses.   (Caddell

7   Decl. ¶ 36); *see Hanlon*, 150 F.3d at 1025 (holding that district court should

8   evaluate the settlement in light of "the risk, expense, complexity, and likely

9   duration of further litigation").   The settlement, by contrast, provides immediate

10  relief.

11         Third, the settlement eliminates any risk that further discovery might raise

12  manageability concerns that would cause the Court to reevaluate class

13  certification.   (*See* Dkt. 138 at 76 n.144 (observing that the Court's conclusion on

14  class certification is "subject to ongoing evaluation in light of ongoing discovery

15  and manageability concerns").)

16         Fourth, the amount offered in settlement demonstrates that this settlement is

17  an excellent result for the Class.   Indeed, the settlement provides remedies similar

18  to what Settlement Class Members could expect after a successful trial, but

19  without the risk or delay associated with continued litigation.   Even if Plaintiffs

20  *had* litigated this action through trial and ultimately obtained a judgment against

21  Honda, there is no guarantee that the judgment would be superior to the settlement

22  obtained here.   *See, e.g.*, *Samuel-Bassett v. Kia Motors America, Inc.*, 34 A.3d 1

23  (Penn. 2011) (nearly 12 years after the commencement of the action—following,

24  among other things, a contested motion for class certification, trial, post-trial

25  motions, and appeal to the Superior Court—the Supreme Court of Pennsylvania

26  ultimately affirmed an award of $600 for brake repairs for each Class Member

27  which was based on the class vehicle having a useful life of 100,000 miles).

28

1    Fifth, this case is at a stage that allows the parties to value it fairly.  The

2    parties engaged in extensive discovery, and Plaintiffs reviewed voluminous

3    quantities of evidence and retained multiple experts.  (Caddell Decl. ¶¶ 22–28.)

4    Plaintiffs also successfully engaged in comprehensive briefing on crucial motions,

5    including Defendants' motion to dismiss, Plaintiffs' motion for class certification,

6    and the interlocutory 23(f) appeal petition.  (*Id*. ¶¶ 29–31.)

7    Sixth, class counsel, highly experienced in class-action and automobile

8    product defect litigation, views this as an excellent settlement.  (Caddell Decl. ¶

9    39.)  While the seventh and eighth factors do not properly apply at preliminary

10   approval, it is worth noting that all of the named Plaintiffs support the settlement.

11   (Caddell Decl. ¶ 40.)

12   Given the favorable terms of the settlement and the rigorous manner in

13   which these terms were negotiated, the proposed settlement is a fair, reasonable,

14   and adequate compromise of the issues in dispute and merits preliminary

15   approval.

16
17   **B.     Conditional Class Certification is Appropriate for Settlement
            Purposes.**

18   The proposed Settlement Class is similar to the classes previously certified

19   by the Court; it simply expands the proposed class to encompass all current and

20   former owners and lessees of the Settlement Class Vehicles regardless of where

21   they purchased or leased their vehicles.  For the same reasons that the Court

22   certified classes in this case before, the Court should find that the proposed

23   Settlement Class meets the requirements of Rule 23.  *See Amchem Prods. v.*

24   *Windsor*, 521 U.S. 591, 622 (1997); Manual for Complex Litigation, § 21.632.

25   The Court's previous analysis of the requirements of Rule 23(a) and 23(b)(3),

26   commonly referred to as numerosity, commonality, typicality, adequacy,

27   predominance, and superiority (Dkt. 138 at 21–75), confirms that certification of

28

1   this proposed Settlement Class is appropriate.  *See* FED. R. CIV. P. 23(a); *Hanlon*

2   *v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998).

3       To the extent that choice of law issues would have presented manageability

4   concerns in the litigation context, the proposed settlement renders those concerns

5   irrelevant.  As the Supreme Court has observed, manageability at trial is not a

6   concern in the class action settlement context, "for the proposal is that there be no

7   trial." *Amchem*, 521 U.S. at 620.  Indeed, relying heavily on *Amchem*, an en banc

8   panel of the Third Circuit, reviewing a nationwide class certification of consumer

9   claims in the settlement context, recently held that Rule 23's predominance

10  requirement did not preclude nationwide settlement-only class certification of

11  claims brought under the consumer protection laws of all 50 states.  *See Sullivan*

12  *v. DB Investments*, *Inc.*, 667 F.3d 273 (3d Cir. 2011) (en banc), cert denied,

13  __U.S.__, 132 S. Ct. 1876 (observing that nationwide classes are appropriate in

14  the settlement context to facilitate all parties' interest in "achieving a global

15  peace").  Under the same guiding principles, the Ninth Circuit has similarly

16  upheld settlement-only class certification in nationwide settlements.  *See, e.g.*,

17  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir. 1998) (finding

18  predominance met for purpose of certifying a nationwide vehicle defect settlement

19  class applying each individual state's consumer protections laws because

20  "although some class members may possess slightly differing remedies based on

21  state statute or common law, the actions asserted by the class representatives are

22  not sufficiently anomalous to deny class certification.  On the contrary, to the

23  extent distinct remedies exist, they are local variants of a generally homogenous

24  collection of causes which include products liability, breaches of express and

25  implied warranties, and 'lemon laws.'").[4]

26  ─────────────

27  [4]  More recently, although the court in *In re Toyota Motor Corp. Unintended Acceleration*, 785 F. Supp. 2d 925 (C.D. Cal. 2011), found that application of California law to the nationwide class is inappropriate, the district court

28

### C.   The Proposed Notice Plan Meets the Requirements of Rule 23.

Rule 23(c)(2)(B) requires that, upon certifying a Rule 23(b)(3) class, the Court must "direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."   In addition, Rule 23(e)(1) requires that before a proposed settlement may be approved, the Court "must direct notice in a reasonable manner to all class members who would be bound by the proposal."

The Parties have agreed on a notice plan that satisfies the requirements of Rule 23.  (Ex. 1 to Caddell Decl. at 16–17.)  Under this plan, Honda will use a vendor that specializes in identifying vehicle owners and lessees to identify all current and former owners and lessees of Settlement Class Vehicles, and Honda will then mail them an individual notice of the proposed settlement along with a claim form.  *See Mullane v. C. Hanover Bank & Trust*, 339 U.S. 306, 314-18 (1950) (explaining that notice by first class mail will generally be the "best practicable notice").  The form of the notice to be mailed, attached as Exhibit 3 to the Settlement Agreement, contains all of the content required by Rule 23(c)(2)(B), including a definition of the class and subclass, a description of the action and the claims; notice of the Settlement Class Members' right to opt out of the proposed settlement; and notice of their right to object to or comment on the settlement and any application for attorneys' fees, costs, and service awards.

---

ultimately certified a nationwide class for purposes of settlement where the consumer protection statutes of the various states were alleged. *See In re Motor Corp*, Case No. 8:10-ml-02151-JVS-FMO (C.D. Cal. December 28, 2012) (Docket No. 3344) (Order Re Motion for Preliminary Approval of Class Action Settlement).

**D.      Notice of The Settlement Will Be Provided To Appropriate Federal And State Officials.**

Notice of the proposed settlement will also be provided to the Attorney General of the United States and the Attorneys General of each state in which a Settlement Class Member resides, as required by the Class Action Fairness Act, 28 U.S.C. § 1715.  (*See* Ex. 1 to Caddell Decl. at 26.)

## IV.   CONCLUSION

For the forgoing reasons, Plaintiffs respectfully request that the Court enter the accompanying Proposed Order granting preliminary approval of the proposed settlement, conditionally certifying the Settlement Class, appointing Plaintiffs as Settlement Class Representatives, appointing Class Counsel to represent the Settlement Class, directing dissemination of Notice to the Settlement Class as proposed, and setting a hearing on final approval of the settlement.

Dated: March 18, 2013

Respectfully submitted,

By:_____

Michael A. Caddell (SBN 249469)
mac@caddellchapman.com
Cynthia B. Chapman (SBN. 164471)
cbc@caddellchapman.com
Cory S. Fein (SBN 250758)
csf@caddellchapman.com
**CADDELL & CHAPMAN**
1331 Lamar, Suite 1070
Houston TX 77010-3027
Telephone:  (713) 751-0400
Facsimile:  (713) 751-0906

Payam Shahian (SBN 228406)
Pshahian@slpattorney.com
**STRATEGIC LEGAL PRACTICES, APC**
1875 Century Park East, Suite 700
Los Angeles, California 90067
Telephone:  (310) 277-1040
Facsimile:  (310) 943-3838

Matthew R. Mendelsohn (*pro hac vice*)
mmendelsohn@mskf.net
**MAZIE SLATER KATZ & FREEMAN, LLC**
103 Eisenhower Parkway
Roseland NJ 07068
Telephone:  (973) 228-9898
Facsimile:  (973) 228-0303

Robert L. Starr (SBN 183052)
Starresq@hotmail.com
**THE LAW OFFICE OF ROBERT L. STARR**
23277 Ventura Boulevard
Woodland Hills, California 91364-1002
Telephone:  (818) 225-9040
Facsimile:  (818) 225-9042

*Attorneys for Plaintiffs*

MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT